We move to the next case this morning, U.S. v. McLean. Please the court, Greg Schweizer on behalf of Appellant Stacey Maclin, I'd like to request two minutes for rebuttal. As the court knows, this appeal presents two issues. First, the tainting of Ms. Maclin's veneer by the statement of a prospective juror. And second, the propriety of the vulnerable victim sentencing enhancement. With the court's permission, I'd like to start with the latter issue, the sentencing. The critical issue here is that the district court clearly erred in its finding that the victim of this crime, Dr. Khan, was financially unsophisticated. That error, in turn, left the vulnerable victim enhancement to be based solely on what the government has described as Dr. Khan's computer illiteracy. Under this court's decision in the United States v. Esterman, illiteracy alone is not enough to justify a vulnerable victim enhancement. What about the response that the judge indicated he would have sentenced to 15 months regardless? The same finding of financial unsophistication is a problem for that determination as well, Your Honor. The district court, or this court has indicated that when a district court makes a statement like that, the court still has to look to make sure that it's certain the district court would come to the same ruling, which requires some level of detail more than sort of a cursory statement. The extent to what we have from the district court, sort of a general discussion of his sense that Ms. Macklin, quote, preyed upon Dr. Khan. Earlier in the sentencing discussion, the district court indicated that that preyed upon finding was based in part on financial unsophistication. So to the extent the district court has clearly erred in finding financial unsophistication, that infected his additional analysis that he would apply the same sentence in any instance. Turning to the second issue, Ms. Macklin, as the court knows, there was a motion in Lemonet at the beginning of trial before Vardier in which Ms. Macklin's trial counsel successfully got information about Dr. Khan's special needs child excluded from the trial because of its potential to cause sympathy for the victim. Nonetheless, during Vardier, one of the veneermen mentioned knowing Dr. Khan because of her assistance with Dr. Khan in preparing a home for autism, which trial counsel moved for mistrial on that basis, indicating that it infected the veneer. Because there was a reasonable possibility that this could have infected the veneer, the mistrial should have been granted. That's a low standard reasonable possibility. I would suggest there's at least seven sources for why that possibility is, in fact, reasonable. First being, as I mentioned, the district court had already concluded that that type of information could cause prejudice. The second, at 820, the district court actually noted to the veneer in advance of Vardier that this case was going to be about a doctor. So once the veneer person made a comment about a doctor, the veneer was primed to pay attention to that. Dr. Khan's name is distinctive. Ms. Sulik, the veneer person, had an issue of reliability as a municipal employee. At least one juror that I identify in my reply brief may have been especially attuned to that information because she, in her professional career, assisted individuals with special needs. The jurors, of course, learned exactly who Dr. Khan was within mere hours of hearing the statement. And lastly, the district court indicated that there were multiple interpretations of the statement the veneer person made. But either of those statements, or either of the interpretations, rather, would invoke the same type of sympathy the district court was concerned about in the first instance. The Ninth Circuit, in Macklin v. Stewart, has ordered a mistrial in a case different but similar insofar as a statement by the veneer person was made. It was reliable. It was fact-based. And it had the potential to infect the jury with prejudice against the defendant. I would submit that the same situation is present here. If there's no further questions, I'll save the remainder of my time for rebuttal. Thank you, Counsel. Thank you. Good morning, Your Honors. And may it please the Court. Nathaniel Whalen here on behalf of the United States. The district court did not abuse its discretion by denying Ms. Macklin's motions for mistrial in a new trial based on a single statement by a potential juror who was ultimately not seated. The statement is, yes, I knew one of the witnesses, Dr. Farzana Khan. And then, I've worked with her on developing her property. She has a home for autism. That's the statement Ms. Macklin is contending mandated a mistrial in this case. And the district court abused the discretion by not granting it. This court has affirmed the decision to deny mistrials in cases where potential jurors talk about a bunch of crooks. They talk about an officer witness being a very honorable man, an upright officer, someone who not purposely tried to deceive anyone. A potential juror claiming the defendant previously held a gun to his head. The defendant tried to pass a fraudulent prescription at the respective juror's workplace. And these are all on pages 13 and 14 of our brief. This statement doesn't rise to that level. I think an unclear, and the district court found an unclear statement that might have referenced Dr. Khan's son. It might have referenced her professional building. It just wasn't clear. And the reason this court's so deferential to district courts on these matters is because they're the ones on the ground. They can hear the statement. They can see its effect upon the potential jurors. They're able to gauge whether this type of statement is going to have any impact whatsoever. The district court found that it didn't in this case. It found it was a fleeting reference that passed people by. The district court did not abuse its discretion in that regard. In terms of the sensing enhancement, the court did not clearly err in finding Dr. Khan was financially illiterate or unsophisticated. Dr. Khan testified that she didn't know how to use ATMs. She didn't know how to use email. She didn't use her own email. She didn't use computers. She did not understand billing whatsoever, electronic billing. And the defendant in this case knew that. The defendant preyed on that. And the defendant was able to steal money that was supposed to go to Dr. Khan from Medicaid to the tune of about $80,000 over the course of the year before this fraud came to light. And it wasn't even the victim who identified it. It was her accountant. I don't know how long this would have gone had a third party not come in and identified it to the victim. Because the victim just didn't have the capacity to uncover this fraud. That's what made her especially vulnerable.  That's correct, Your Honor. Not dissimilar to some of the allegations here, correct? The district court noted the similarity. That's correct, Your Honor. It was a fraud case. What was the gap in time between the previous conviction and this trial? She was still paying restitution on her previous trial when she committed this offense. I can't tell you exactly how long she'd been off supervised release if she was on supervised release in the previous case. I can't give you a month frame.  But I can tell you she was still paying restitution by the time she committed this offense. Was there a motion to exclude that previous conviction? How was it ruled upon? Was it a circumstance where the ruling was, have you ever been convicted of a crime? Yes, how many times? One time, something like that. Well, Your Honor, Ms. Macklin didn't testify, and so that information didn't come in. I believe, and I might be wrong on this, but I believe that there was a motion that was found beyond the federal rules limitation. So it was too old. And so it wouldn't have come into trial. And the government didn't try to introduce that at trial. The fact of the matter is that 15 months is either in the enhanced or in the regular guideline range. So why is this even an issue? I agree with Your Honor, it's not an issue. And the district court made clear time and again that this wasn't an issue. He went out of his way to say, to Your Honor's point exactly, this is within either guideline frame. It's what I would have given regardless. Even if the court did clearly err in finding that she was financially illiterate, which it didn't, it's allowed to consider these things as 3553A factors. The court's statement is pretty unequivocal that it was going to give the same sense regardless. And I don't think there's a reason of remand for the court to do just that. Unless this court has any questions on either of the two issues, we would ask that you affirm the judgment of the district court. Thank you. Mr. Switzer. Your Honors, I'd like to respond to a few things the government stated. The first thing I'll note is the cases that the government cites that are examples where this court or others have assessed of a near-person statement. I distinguish most of them in my briefing. The one I want to point to, the two I'd like to point to specifically, the one in which an individual referenced in one of the non-victim witnesses being an honorable man. I submit that's significantly different, given it's a non-victim witness. The gun-to-the-head case is the Carson case, which I know, Judge Keeney, you authored. I would point out a few differences in that case. First of all, the reference wasn't to the defendant having pointed a gun to the head. It was a reference to a separately tried co-defendant. The district court also indicated in that case that the statement was stated in such a quiet manner that the veneer would not have even heard it. So that case has a number of reasons that it's not directly on point. In terms of the arguments about the sentencing enhancement, the government cites Dr. Cohn's inability to use an ATM machine, email, et cetera. That's, frankly, different from financial unsophistication. The district court made two separate factual findings, that she was computer illiterate and financially unsophisticated. And conflating them is not how the district court should review the district court's findings. I would submit, as a general matter, it simply can't be the case that the vulnerable victim enhancement is designed to render anyone vulnerable who is a victim of a computer crime who may have entered his or her profession before computers were prolific. A few other things I'd like to respond to. First, the victim, Dr. Cohn, did identify that she was not receiving the normal amount of money she was used to receiving within months. It did not solely take a separate individual accounting to find it. She did then hire someone to help her assess what was happening. But she did notice that on her own. And in terms of Judge Kamey's questions about 15 months being within either guidelines range, two points to that. One, my argument is procedural, not substantive. I don't argue that substantively, if the enhancement was correct, that 15 months would be appropriate. And I would point the court to the Supreme Court's decision in Molina-Martinez, where it said that if a guidelines range isn't properly calculated, it doesn't matter if the correct guidelines range would have also fallen within the same range. There's still a presumption of reversal and resentencing in that situation. If the court has no further questions, that's all right. Counsel, you were appointed to represent the defendants. I was, Your Honor. Court expresses thanks for your excellent representation of your client, and appreciates your time. Thank you. Thanks to both counsel, and the case will be taken under advisement.